# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

—o0o—

| | |
|---|---|
| ISAAC ELI GALVAN, | ) 1:04-CV-06446 LJO JMD (HC) |
| Petitioner, | ) FINDINGS AND RECOMMENDATION |
| v. | ) REGARDING PETITION FOR WRIT OF |
| | ) HABEAS CORPUS |
| RICHARD KIRKLAND, et. al., | ) |
| Respondent. | ) |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This action has been referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72-302.

## PROCEDURAL HISTORY

Petitioner is confined by the State of California, pursuant to a judgment of the Superior Court of California, County of Kern. On October 12, 2001, a jury convicted Petitioner of: (1) use of a minor as an agent to violate provisions of the California Health and Safety Code (Cal. Health & Saf. Code, § 11380(a)); (2) possession of methamphetamine for the purpose of sale (§ 11378);

(3) transportation of a controlled substance (§ 11379(a)); and (4) participation in a criminal street gang (Cal. Pen. Code, § 86.22).  In connection with count two, Petitioner was found to have committed the offense for the benefit of a criminal street gang within the meaning of Cal. Pen. Code § 186.22(b)(1).    In addition, Petitioner's sentences for counts one and two were doubled pursuant to Cal. Pen. Code § 667© through (j) and 1170.12(a) through (e).  Petitioner was sentenced to a term of twenty years, and four months in state prison.

On February 19, 2002,, Petitioner filed his Opening Brief on Appeal.  On September 4, 2002, the California Court of Appeals, Fifth Appellate District (hereinafter "Fifth DCA") affirmed Petitioner's conviction.

On October 10, 2002, Petitioner filed a petition for review before the California Supreme Court.  The court denied the petition on November 13, 2002.

On January 22, 2003, Petitioner filed a petition for writ of habeas corpus with the Kern County Superior Court.  On March 17, 2003, the court denied the petition.

On April 3, 2002, Petitioner filed a petition for writ of habeas corpus with the Fifth DCA. The court denied the petition June 13, 2003.

On September 2, 2003, Petitioner filed a second petition for writ of habeas corpus with the Kern County Superior Court,.  The court denied the petition on September 30, 2003.

On September 2, 2003, Petitioner also filed a petition for writ of habeas corpus with the California Supreme Court.  The petition was denied June 9, 2004.

On October 15, 2003, Petitioner filed a third petition for writ of habeas corpus in the Kern County Superior Court.  The petition was denied October 29, 2003.

On December 4, 2003, Petitioner filed a second petition for writ of habeas corpus with the California Supreme Court.  The court denied the petition June 9, 2004.

On October 7, 2004, Petitioner filed the instant Petition for Writ of Habeas Corpus.  The Petition was Amended on March 24, 2005.  On October 11, 2005, Respondent filed its Answer to the Petition, and on December 5, 2005, Petitioner filed a Traverse to Respondent's Answer.

///

///

ed

1

# FACTUAL BACKGROUND

2

**Prosecution Evidence**

3

On April 7, 2001, twelve-year-old Christina S. Was riding in a Honda Accord with her brother David Diaz, her two cousins Jessica G. And Lupe, Jose Gomez and Petitioner, when the police pulled the car over.  (RT 47, 56-58).

4

5

Christina S. recalled the police finding drugs in the pocket of her jacket and she told a police officer Petitioner had put them there about the time the police stopped the vehicle.  (RT 50).  At trial, however, Christina S. Testified she only said that to the officer because she was afraid she would get in trouble for having the drugs.  (RT 50).  She testified she got the jacket from home just before leaving with her friends and was unaware the drugs were in the jacket pocket. Officers found drugs in both pockets (RT 51-53).

6

7

8

Jessica G. Was riding in the front passenger seat when the officers stopped the Honda.  Petitioner, known to Jessica G. By his gang name "Crazy Boy," was seated directly behind her.  Upon seeing the police were about to stop the Honda, Petitioner tossed Jessica G. A small bag of "white stuff" she knew was "something bad."  (RT 66-69).

9

10

Jessica G. Tossed the bag back to Petitioner because she was afraid of getting in trouble for having the drugs.  (RT 69).  She heard Petitioner say to Christina S.  "Here, Christina," and tell her to hide the baggie.  (RT 70).

11

Jessica G. testified that about one week before trial, Petitioner's girlfriend, Veronica Diaz, Christina S.'s older sister, told Jessica G. She was a "snitch."  (RT 70-71).

12

13

Bakersfield Police Officers Ty Lewis and Michael Davidson spotted the Honda and decided to pull it over for vehicle infractions.  As they began to exit their police vehicle and approach the Honda, the officers observed Petitioner seated in the right rear passenger seat.  He was bent forward, resting his head close to the front seat, with his arms and shoulders leaning forward.  "He appeared to be manipulating some sort of object."  (RT 79-82, 143).

14

15

16

As the officers approached the Honda, Officer Lewis warned Officer Davidson to watch Petitioner because of his actions inside the vehicle.  Officer Davidson could see Petitioner had his hands beneath a jacket.  Officer Davidson ordered Petitioner to show his hands, but Petitioner refused to comply.  Concerned that Petitioner might be armed, the officers ordered all occupants out of the vehicle.  (RT 145-147).

17

18

19

After having the occupants exit the vehicle, Officer Lewis patted down Christina S.'s jacket pockets where he discovered about two ounces of methamphetamine.  She then said there was another baggie of drugs in her front pant pocket.  Officer Lewis retrieved both bags of methamphetamine which, in his opinion, totaled about four ounces of the drug.  (RT 82-85).

20

21

Officer Lewis would not have suspected that a twelve-year-old female would be in possession of such a large quantity of methamphetamine, but based on his training and experience, realized that drug dealers and gang members often used female juveniles to hold their drugs knowing police officers are hesitant to search females.  (RT 87-88).

22

23

His suspicions were verified by Christina S> She said that when the officers stopped the Honda, Petitioner passed the methamphetamine to her cousin, Jessica G.  In turn, Jessica G. passed it back to Petitioner who gave it to Christina S. Who put the drugs in her pockets.  (RT 89).  Petitioner's motions when the officers were approaching the Honda from their vehicle appeared consistent with Christina S.'s version of the events.  (RT 89).

24

25

26

Petitioner was also searched.  Methamphetamine was found in his right front pants pocket and in the breast pocket of his jacket.  (RT 91).  He also had a pager in his pocket.  (RT 92).

27

28

ed

A lab analysis of the substances showed Petitioner to be in possession of two one-half-gram baggies of methamphetamine, and two baggies containing 2.28 ounces and 2.01 ounces of methamphetamine, respectively.  (RT 157).

In Officer Lewis's opinion, the methamphetamine discovered in the possession of Christina S. And Petitioner were possessed for sale due to the large quantity of the drug found.  The officer opined that the methamphetamine would yield 489 individual uses.  The street value of the drugs was $9,960.  (RT 94-95).

**Defense Evidence**

The defense rested without presenting any evidence.  (RT 247).

## DISCUSSION

### I.  **Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), cert. denied, 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), cert. denied, 520 U.S. 1107 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after its enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### II.  **Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C . § 2254(a).

The instant petition is reviewed under the provisions of the AEDPA.  Lockyer v.

1    Andrade, 538 U.S. 63, 70 (2003).  Under the AEDPA, a petition for habeas corpus will not be

2    granted unless the adjudication in question "resulted in a decision that was contrary to, or

3    involved an unreasonable application of, clearly established Federal law, as determined by the

4    Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable

5    determination of the facts in light of the evidence presented in the State Court proceeding." 28

6    U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

7        As a threshold matter, this Court must "first decide what constitutes 'clearly established

8    Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at

9    71, quoting 28 U.S.C. § 2254(d)(1).  In ascertaining "clearly established Federal law," the Court

10   looks to the "holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the

11   relevant state-court decision." Id., quoting Williams, 592 U.S. at 412.  "In other words, 'clearly

12   established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth

13   by the Supreme Court at the time the state court renders its decision." Id.

14       Finally, this Court must consider whether the state court's decision was "contrary to, or

15   involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at

16   72, quoting 28 U.S.C. § 2254(d)(1).  "Under the 'contrary to' clause, a federal habeas court may

17   grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

18   Court on a question of law or if the state court decides a case differently than [the] Court has on a

19   set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also   Lockyer, 538 U.S.

20   at 72.  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the

21   state court identifies the correct governing legal principle from [the] Court's decisions but

22   unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at

23   413.

24       This Court may not issue the writ simply because in its independent judgment the state

25   court decision applied clearly established federal law erroneously or incorrectly; for a writ to

26   issue, 'that application must also be unreasonable." Id. at 411.  A federal habeas court making

27   the "unreasonable application" inquiry should ask whether the state court's application of clearly

28   established federal law was 'objectively unreasonable." Id. at 409.

1   Petitioner has the burden of establishing that the decision of the state court is contrary to

2   or involved an unreasonable application of United States Supreme Court precedent.  Baylor v.

3   Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

4   states, ninth circuit precedent remains relevant persuasive authority in determining whether a

5   state court decision is objectively unreasonable.  See  Duhaime v. DuCharme, 200 F.3d 597, 600-

6   01 (9th cir. 1999).

7   AEDPA requires that this court give considerable deference to state court decisions.  The

8   state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).  Moreover, we are

9   bound by a state's interpretation of its own laws.  Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.

10   2002), cert. denied, 537 U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

11   III.  **Review of Petitioner's Claims**

12   In his Petition, Petitioner claims a conflict of interest existed between himself and his trial

13   counsel which caused trial counsel to inadequately represent him.  (Pet. at 5-6).  Petitioner raises

14   multiple subclaims of ineffective assistance.  (Pet. at 5-10).  The Court will first address the

15   applicable legal standard and then address each subclaim in turn.

16   **A.    Clearly Settled Supreme Court Law**

17   The law governing ineffective assistance of counsel claims is clearly established for the

18   purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe,

19   151 F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of habeas corpus alleging ineffective

20   assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S.

21   668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First,

22   the Petitioner must demonstrate counsel's performance was deficient, requiring a showing that

23   counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by

24   the Sixth Amendment.  Strickland, 466 U.S. at 687.  The Petitioner must show counsel's

25   representation fell below and objective standard of reasonableness, and must identify counsel's

26   alleged acts or omissions that were not the result of reasonable professional judgement

27   considering the circumstances.  Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

28   (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges

a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, the Petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result...would have been different."  466 U.S. at 694. Petitioner must show counsel's errors were so egregious as to deprive Petitioner of a fair trial, one whose result is reliable.  STrickland, 466 U.S. at 688.  The court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any deficiency not resulting in prejudice must necessarily fail.  However, there are certain instances that are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance.  See Strickland, 466 U.S. at 692; United States v. Cronic, 466 U.S. at 659, n. 25 (1984).

Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

**B.     Analysis of Petitioner's Claims**

**1.     Subclaim One: Conflict of Interest**

In the first subclaim, Petitioner claims trial counsel's previous representation of Petitioner and Petitioner's having accused trial counsel of making sexual advances toward him resulted in a prejudicial conflict of interest rendering his assistance ineffective.

a.     Factual Background

Pretrial

On June 15, 2001, a pretrial *Marsden* hearing was held.  (Jun. 15, 2001 RT 2-11).  At the

hearing Petitioner told the trial court his trial counsel made a "homosexual advance towards me." (Id. at 2).  Petitioner stated:

> He made a homosexual advance toward me.  I felt – he touched my hand wrong and I told him off in the little conference room at Lerdo, and ever since then I feel he's been misrepresenting me.  He hasn't been trying to do nothing for me.  I cussed him out. [¶] He was showing me a paper and he touched my hand.

(Jun. 15, 2001 RT 2).

When asked to respond to Petitioner's claim, trial counsel stated:

> Well, I never touch defendants, because they could have AIDS; they could have hepatitis; they could have tuberculosis.  So I never touch their hands.  I don't shake hands with them [¶] When I go out there, they have this little door that opens up about this big and they have a real small slip you can slide things through.  I don't have any contact with them [¶] I never touch those people.  I never touch them at all.

(Jun. 15, 2001 RT 6-7).

When asked whether he recalled being yelled at by Petitioner, trial counsel stated: "I went to see him this week and tell him what the readiness offer was, and at that point he started yelling and swearing at me, and I just got up and left."  (Jun. 15, 2001 RT 7).

The trial court denied Petitioner's *Marsden* motion.

Post Trial

_____After trial concluded, the trial court appointed special counsel for the purpose of reviewing and investigating Petitioner's allegations of ineffective assistance of counsel.  (CT 236, 247).  On October 12, 2001, the trial court held *in camera* proceedings with Petitioner, special counsel and Petitioner's trial counsel.  Special counsel informed the trial court that Petitioner had two claims, one being Petitioner's allegations of homosexual advances and the other being trial counsel's failure to call Veronica Diaz as a witness.  (Sealed Oct. 12, 2001 RT 6-7).  Special counsel explained that Petitioner felt Diaz would provide exculpatory testimony, but special counsel noted that if Diaz testified she would have been impeached with prior convictions.  (Sealed Oct. 12, 2001 RT 7).

Petitioner's trial counsel told the court that based on information provided by the prosecutor and on Diaz's "rap sheet," he was aware of her prior convictions for passing bad

ed

checks, welfare fraud, and misdemeanor petty theft. (Sealed Oct. 12, 2001 RT 7). In addition, trial counsel felt Diaz could be impeached due to bias as he was informed she had a child with Petitioner. (Id. at 8.) Trial counsel also indicated there were unsettled questions regarding whether Petitioner could face statutory rape charges as a result of fathering Diaz's child. (Id.).

Special Counsel explained that Petitioner claimed Diaz's child was not his. Special counsel noted that regardless of whether the child was his, the question of whether to call Diaz as a defense witness was a tactical decision to be made by trial counsel. (Sealed Oct. 12, 2001 RT 8).

Petitioner was asked to explain why he felt trial counsel was ineffective. Petitioner explained that Diaz only told trial counsel the baby was Petitioners in order to get trial counsel to be more sympathetic toward Petitioner. (Sealed Oct. 12, 2001 RT 9-10). Petitioner claimed trial counsel told Diaz he did not want to call her as a witness because the prosecutor would make her look "stupid," and because the jury would not believe her. (Id.). Petitioner stated he wanted the jury to determine whether they believed Diaz. She was Jessica G.'s older sister, and he expected her to testify that she heard Jessica G. Say "it's better me [Petitioner] than anybody, any family," in reference to taking the blame for possession of the narcotics. (Id.).

The trial court then asked Petitioner about his allegations that trial counsel made advances toward him, and how the allegation supported his motion for a new trial. (Sealed Oct. 12, 2001 RT 12). Petitioner stated he was sure there was a "grudge" between himself and trial counsel based on the allegations in his *Marsden* petition, and that because of this grudge he did not think trial counsel represented him well. (Id. RT 12-13).

The trial court asked the special counsel to give an opinion as to whether there was good cause to pursue a motion for new trial, including on the grounds of ineffective assistance. (Id. at RT 17). Special counsel responded:

> I honestly don't believe there are any grounds. The only thing that sounds different to me than what I had anticipated uncovering was a question about the paternity of the child. But I don't believe that changes the impeachability of the witness had they [sic] taken the stand. I believe again that goes back to [trial defense counsel] tactically deciding not to put a witness on for that purpose for fear of it being more damaging. [¶] Based on what I have heard, Judge, I honestly don't believe that I could file a meritorious motion.

(Sealed Oct. 12, 2001 RT 17).

The trial court then asked trial counsel to address the allegations.  Trial counsel explained that Veronica Diaz was not a passenger in the car when it was pulled over, and was therefore not a percipient witness.  Trial counsel recalled that Diaz would have testified Jessica G. Found the drugs in a nearby park about an hour prior to the traffic stop.  Trial counsel thought Diaz's testimony was unbelievable because approximately $9,000 of methamphetamine was found in the car, and it was not likely such a large quantity of narcotics would be laying around a park.  In addition, trial counsel reiterated that he never touched Petitioner's hand.

The trial court went on to deny Petitioner's motion, stating:

> I do not find under all the circumstances that [trial defense counsel] has denied [Petitioner] effective assistance of counsel or has been inadequate in his representation of the defendant.  I don't find that there has been any defense that should have been presented that was not presented.  I don't find that [trial defense counsel] has failed to consult adequately or failed to investigate the facts or law adequately.
> I do note that there have been some tactical disagreements.  But just so [Petitioner] understands why the Court is ruling the way it's ruling now, when there are issues about which witnesses to call, what tactics to use, that's something the attorney makes the final decision on – with input from the defendant.  But it's the final call for the attorney to decide tactically how to present the trial, how to present the defense evidence at trial, or what evidence to present.
> And so I find there's been a disagreement here as to tactics and strategy but not a failure to adequately represent the defendant.  So the *Marsden* motion which I am treating as a *Marsden* motion is denied.
> I am also going to find that there is no good cause to have [special counsel] continue on as special counsel to further pursue a motion for a new trial.  I appreciate that [special counsel] is willing to have the court appoint a different investigator to assist him in any further preparation that he would need to make before he decides if the motion should be filed.  I'm satisfied under all the circumstances that that [sic] would not result in a meritorious motion; that even if the investigator were to develop that facts that [Petitioner] believes could be developed that would not constituted grounds for a new trial motion.

(Sealed Oct. 12, 2001 RT 19-20).

### b.     State Court Review

Following trial, Petitioner first raised his ineffective assistance claim before the Kern County Superior Court in a writ for habeas corpus relief.  The Superior Court found Petitioner had failed to establish ineffective assistance or prejudice.  The court stated:

Conflict of Interest
Petitioner presents no facts and/or no documentary evidence that such a conflict

arose by the mere fact that there was a disagreement between Petitioner and counsel in the prior case.  To prevail on an ineffective assistance of counsel claim on this basis, Petitioner has to offer facts and/or documentary evidence as to what the actual conflict was, that the conflict specifically caused counsel to act in a specific manner, that had there been no conflict counsel would have done specific things, and that Petitioner would have received a better result at trial.  Specific actions of counsel are discussed below.  As Petitioner failed to establish that the mere fact there may have been a conflict caused counsel to be ineffective he has failed to establish that there was a *reasonable probability* that he would have received a better result and has failed to show prejudice as a demonstrable reality.  Therefore, Petitioner's claim that a conflict of interest caused ineffective assistance of counsel is an unsupported conclusory allegation that is insufficient to support the relief granted.  *In re Swain*, 34 Cal.2d 300, 303-304 (1949).

Superior Court Habeas Op. at 6, emphasis in original.

With regard to Petitioner's allegation that trial counsel had made a sexual advance toward him thus creating conflict, the Superior Court found:

Advance
Petitioner presents no facts and/or no documentary evidence that any such advances were made, but state[s] that he believes that counsel's touch of Petitioner's hand constituted an advance towards Petitioner.  However, even assuming that an advance occurred, Petitioner failed to present any facts and/or documentary evidence that Petitioner's rebuff of such an advance caused Counsel to be ineffective.   To prevail on an ineffective assistance of counsel claim on this basis, Petitioner has to offer specific facts and/or documentary evidence that his rebuff specifically caused counsel to act in a specific manner, that had there been no rebuff that counsel would have done specific things but would have done the acts that petitioner asserts he should have done, that the jury would have viewed the additional testimony and evidence in favor of petitioner and that Petitioner would have received a better result at trial.  As Petitioner failed to establish that the mere fact that there was a *reasonable probability* that he would have received a better result had counsel not made the advance, he has failed to show prejudice as a demonstrable reality.  Therefore, Petitioner's claim that an alleged advance by counsel caused ineffective assistance of counsel is an unsupported conclusory allegation that is insufficient to support the relief granted.  *In re Swain*, 34 Cal. 2d 300, 303-304.

Superior Court Habeas Op. at 6, emphasis in original.

Following the Superior Court's denial of his petition, Petitioner raised these same claims in a petition for writ of habeas corpus before the Fifth DCA.  The Fifth DCA denied Petitioner's claims as follows:
The "Petition For Writ Of Habeas Corpus" filed in this court on April 3, 2003, is denied.  Petitioner's claims are conclusional and lack supporting analysis and documentation.  (*People v. Duvall* (1995) 9 Cal.4th 464, 474.)  Petitioner has failed to adequately explain the delay in bringing these issues before this Court. (*In re Harris* (1993) 5 Cal.4th 813, 828) or show prejudice due to the claims of ineffective assistance of counsel.  (*People v. Williams* 1988) 44 Cal.3d 883, 937.)

1  Fifth DCA Op. At 1.

2      Petitioner again raised these claims before the California Supreme Court, which issued a

3  silent denial of said claims.

4                          c.      Analysis of Petitioner's Claim

5      _____The state courts' denial of Petitioner's claim is not an unreasonable application of clearly

6  settled Supreme Court law.

7      As an initial matter, Petitioner's claim fails as it is conclusory and not supported by the

8  facts.  Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995); Schlette v. California, 284 F.2d 827,

9  833-34 (9th Cir. 1960).  Other than stating that defense counsel touched his hand and looked at

10  him, Petitioner provides no evidence to substantiate a claim that his trial counsel made a sexual

11  advance toward him.  Trial counsel denied any advance.  The trial court determined at the

12  *Marsden* hearings that, assuming trial counsel did touch Petitioner's hand, the touch did not

13  constitute a sexual advance nor did it provide a basis for granting a *Marsden* motion.  We agree

14  with the state courts that the record does not support a finding that a sexual advance was made.

15      Moreover, the state courts correctly applied the Strickland standard in assessing

16  Petitioner's claim.  The state courts noted that even assuming a sexual advance had been made

17  and rebuffed, Petitioner failed to demonstrate that counsel's performance was adversely affected

18  as a result.  To obtain habeas relief due to ineffective assistance of counsel, Petitioner must show

19  not only conflict, but specific examples of inadequate representation.  Morris v. Slappy, 461 U.S.

20  1, 8 (1983).  Petitioner has alleged numerous examples of inadequate representation.  However,

21  as noted below, none of these claims has merit.  Thus, Petitioner has failed to show any prejudice

22  as a result of the alleged conflict between himself and trial counsel.

23      _____While the Sixth Amendment guarantees effective assistance of counsel including the right

24  to undivided loyalty in representation, it guarantees only competent representation, not a

25  meaningful relationship.  Wood v. Georgia, 450 U.S. 261, 271-72 (1981); Morris v. Slappy, 461

26  U.S. at 13-14.  Mere differences over trial strategy do not constitute grounds to substitute

27  counsel.  Schnell v. Witek, 218 F.3d 1017, 1026, n. 8 (9th Cir. 2000) ("a lawyer may properly

28  make a tactical determination of how to run a trial even in the face of his client's

1  incomprehension or even explicit disapproval."); see also United States v. Robinson, 913 F.2d

2  712, 716 (9th Cir. 1990) (trial counsel not obligated to blindly follow a defendant's instructions).

3  _____To prevail on an ineffective assistance claim based on alleged conflict of interest,

4  Petitioner must demonstrate not only the existence of such a conflict, but also that the conflict

5  adversely affected his trial counsel's performance.  Frazer v. United States, 18 F.3d 778, 784 (9th

6  Cir. 1994); Schnell v. Witek, 218 F.3d at 1025-26.

7  Because Petitioner fails to demonstrate that trial counsel's performance was

8  constitutionally deficient, his ineffective assistance of counsel claim based on the alleged conflict

9  of interest between himself and trial counsel is without merit and should be denied.

10  **2.   Subclaims Two through Six: Failure to Call Witnesses**

11  Petitioner's second through sixth subclaims are all based on his trial counsel's decision

12  not to call Veronica Diaz and Joseph Garcia as witnesses on his behalf.  In the second subclaim,

13  Petitioner contends trial counsel breached his duty of loyalty to Petitioner by leading him to

14  believe he had subpoenaed certain witnesses to testify on his behalf at trial.  In the third subclaim

15  Petitioner contends one of trial counsel's justifications for not calling Veronica Diaz because she

16  had, among other convictions, a prior conviction for welfare fraud, was a "blatant lie."  (Pet. at

17  6).  He further claims trial counsel did not justify why he did not call Joseph Garcia as a witness.

18  In subclaim four, Petitioner claims trial counsel violated Standard Rule 4-5.2 of the American

19  Bar Association's Standards for Criminal Justice by failing to consult with him regarding which

20  witnesses to call, and what evidence to introduce.  (Pet. at 6).  In subclaim five, Petitioner

21  contends trial counsel breached his ethical duty to keep his client informed of case developments

22  and to promptly respond to questions.  (Pet. at 6-7).  And in subclaim six, Petitioner claims the

23  failure of trial counsel to investigate witnesses who could corroborate the defense theory

24  constitutes ineffective assistance.  (Pet. at 7).

25  a.   State Court Review

26  The California Superior Court concluded Petitioner had not demonstrated ineffective

27  assistance of counsel on these claims.  It stated:

28  Failure to subpoena witnesses

1
2
3
4
5
6
7
8

> Petitioner presents no facts and/or no documentary evidence that had counsel subpoenaed the witnesses Petitioner asserts should have been subpoenaed and/or put certain witnesses on the stand, that the witnesses would have testified in Petitioner's favor, that the jury would have found the witnesses credible and viewed the testimony in Petitioner's favor and that Petitioner would have received a better result at trial. Merely stating that witnesses would have testified a certain way is insufficient to show as demonstrable reality that [he] would have received a better result at trial. As Petitioner failed to establish that there was a *reasonable probability* that he would have received a better result had counsel subpoenaed/called witnesses to testify, he has failed to show prejudice as a demonstrable reality. Therefore, Petitioner's claim that he [received] ineffective assistance of counsel on the basis of counsel's failure to subpoena/call witnesses to testify is an unsupported conclusory allegation that is insufficient to support the relief granted [sic]. [Citation].

9    (Superior Court Habeas Op. at 6).

10   Petitioner then presented these claims before the Fifth DCA. In denying these claims, the

11   Fifth DCA noted that Petitioner's claims were conclusory and lacking in supporting analysis and

12   documentation. Moreover, the Fifth DCA found Petitioner failed to show prejudice as a result of

13   trial counsel's allegedly ineffective assistance.

14                          b.      Analysis of Petitioner's Claims

15   The determination of the state courts is not an unreasonable application of the standard

16   articulated by the Supreme Court in <u>Strickland</u>. The record reflects that Petitioner's trial counsel

17   was aware of the existence of these individuals but made the tactical determination not to call

18   them as witnesses at trial. The prosecutor, Petitioner's trial counsel, and the special counsel all

19   concurred that there were legitimate tactical reasons for not calling witness Diaz. Diaz was

20   vulnerable to impeachment for prior convictions as well as impeachment for bias as Diaz's

21   girlfriend and due to her claims that Petitioner was the father of her child. Moreover, trial

22   counsel expressed concern that Diaz's potential testimony was not credible, and was further

23   concerned that her testimony could expose Petitioner to additional charges of statutory rape as a

24   result of Diaz's claim he fathered her child.

25   Moreover, even had Diaz testified as Petitioner asserts she would, the value of her

26   testimony to his defense is questionable. Diaz was not present during the events leading to

27   Petitioner's arrest. Petitioner himself admitted that Diaz's testimony would not have aided his

28   defense. (Sealed Oct. 12, 2001 RT at 10) ("....not that she was going to get me off....").

ed                                    14

1    It is well-settled that a difference of opinion as to trial tactics does not constitute

2 ineffective assistance of counsel.  United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981).  In

3 light of the problems associated with Diaz's testimony, trial counsel's decision not to call her as

4 a witness was a valid tactical decision well within the bounds of effective legal assistance.

5    With respect to Garcia, Petitioner states that Garcia would have testified about his

6 familial relationship with Jessica G. (Garcia is her cousin), and that he did not trust her.  Even

7 assuming Garcia would have so testified, Petitioner fails to demonstrate any prejudice by virtue

8 of trial counsel's decision not to call this witness.  Garcia's personal opinion about his cousin

9 would have little probative value.  To prevail on this claim, Petitioner must demonstrate that it is

10 reasonably probable that the result in the case would have been different but for the decision not

11 to call Garcia as a witness.  Strickland defines a "reasonable probability" as "a probability

12 sufficient to undermine confidence in the outcome." 466 U.S. at 693.  The absence of Garcia's

13 testimony does not undermine confidence in the outcome.  Therefore, this claim should be

14 denied.

15    With respect to Petitioner's claim in subclaims four and five, that trial counsel breached

16 ethical duties to consult with him regarding trial strategy, the record reflects that trial counsel *did*

17 discuss this issue with Petitioner.  Petitioner admitted during the post-trial hearing that trial

18 counsel told him he did not want to call Diaz as a witness.  (Sealed Oct. 12, 2001 RT 10).

19 Petitioner also indicated his awareness that trial counsel talked to Diaz about his reasons for not

20 calling her as a witness.  Id.

21    In subclaim six Petitioner alleges trial counsel failed to investigate defense witnesses who

22 could corroborate his defense theory.  A lawyer is under a duty to investigate the information

23 possessed by potential witnesses, even if he later decides not to call them to the stand.  Sanders v.

24 Ratelle, 21 F.3d 1446, 1457 (9th Cir. 1994), quoting Strickland, 466 U.S. at 689.  Here, the record

25 reflects that trial counsel made a reasonable investigation into these potential witnesses.  Their

26 names were placed on the list of potential witnesses.  Trial counsel investigated Diaz's criminal

27 background and spoke to her on more than one occasion, ultimately making the tactical

28 determination not to call her as a witness.  Petitioner does not indicate any other defense

1   witnesses who should have been investigated, nor how these or any other potential witnesses

2   would have benefitted his case.  Moreover, even assuming counsel's performance was deficient,

3   as noted above Petitioner fails to demonstrate any prejudice as a result of the failure to call

4   Veronica Diaz and Joseph Garcia as defense witnesses.  Accordingly, the state courts' denials of

5   Petitioner's claims were not unreasonable applications of clearly established federal law.

6                            **3.      Subclaim Seven**

7          In subclaim seven of his Petition, Petitioner contends trial counsel failed to challenge the

8   legitimacy of the questioning and search of minors Christina S. And Jessica G. Without the

9   consent of their guardian.  (Pet. at 7).  He further claims trial counsel failed to acknowledge their

10  inconsistent statements in the police report, and failed to question why the interrogation of these

11  minors was not tape recorded.  (Pet. at 7.)  Petitioner claims ineffective assistance due to the fact

12  the evidence seized and obtained from these individuals could have been suppressed.  (Pet. at 7.)

13                          a.      State Court Review

14         This claim was first presented to the Kern County Superior Court in a petition for writ of

15  habeas corpus.  The Superior Court denied Petitioner's claim.  It found Petitioner failed to

16  provide facts and/or documentary evidence that had trial counsel challenged the search/seizure of

17  Christina S. And Jessica G. That the Court would have sustained the challenge, that the trial

18  court would have suppressed the evidence, and that as a result of such suppression Petitioner

19  would have received a better result at trial.  Because Petitioner failed to demonstrate a reasonable

20  probability he would have received a better result had trial counsel challenged the search and

21  seizure, the trial court found he failed to demonstrate the requisite prejudice to obtain relief.

22  Petitioner next presented this claim before the Fifth DCA.  The Fifth DCA rejected the claim

23  finding it "conclusionary and lacking supporting analysis and documentation." (Fifth DCA Op.

24  at 1.)  The Court further held Petitioner had failed to show prejudice as a result of trial counsel's

25  allegedly deficient assistance.  (Id.)

26                          b.      Review of Petitioner's Claim

27         To obtain relief for ineffective assistance of counsel due to counsel's failure to raise a

28  Fourth Amendment search and seizure issue, petitioner must show both that trial counsel's

ed                                    16

1   performance was deficient and that the deficiency prejudiced his defense.  <u>Strickland</u>, 466 U.S. at

2   687-92.  To demonstrate prejudice, Petitioner must show: (1) the omitted motion to suppress

3   would have been meritorious; (2) there is a reasonable probability the jury would have reached a

4   different verdict had the evidence been excluded.  <u>Kimmelman v. Morrison</u>, 477 U.S. at 375;

5   <u>Ortiz-Sandoval v. Clarke</u>, 323 F.3d 1165, 1170 (9th Cir. 2003).  Petitioner's claim fails because

6   any motion to suppress would have been without merit and would have been denied.

7       First, any motion by Petitioner to suppress this evidence would be denied because

8   Petitioner did not have standing to challenge the search and seizure of Christina S.  Moreover,

9   under <u>Terry v. Ohio</u>, 392 U.S. 1, 27 (1968), police offers may conduct a limited, warrantless

10  search for weapons if they have a reasonable, articulable suspicion that a person may be armed

11  and presently dangerous.  The officer conducting the search testified that he conducted a pat-

12  down search of all the occupants of the vehicle because he witnessed Petitioner moving around

13  inside the vehicle, leaning forward and extending his arms as if he was concealing something.

14  (RT 82-83).  He was concerned Petitioner may have given a gun to Christina S., so he conducted

15  a pat-down search of her.  (RT 130).  It was during this search that the methamphetamine was

16  discovered.

17      Given this, it was not ineffective for Petitioner's trial counsel to conclude that Petitioner

18  had no standing to challenge the search of Christina S., and that any motion to suppress the

19  evidence found in her jacket would lack merit under <u>Terry v. Ohio</u>.

20      Petitioner further claims that trial counsel should have objected to the admissibility of

21  Christina S. and Jessica G.'s statements on the basis they were questioned without their parents

22  present.  This claim is without merit.  Petitioner does not articulate a legal basis upon which such

23  a challenge could be based.  Nothing on the record demonstrates that either girl requested to

24  speak to their parents or invoked their Fifth Amendment rights.  Trial counsel in fact did

25  challenge the admissibility of the statements through a hearsay objection at trial.  (RT 84).  The

26  objection was overruled.  Trial counsel's actions with respect to the testimony in question

27  constituted effective assistance of counsel.

28      Petitioner claims trial counsel failed to highlight discrepancies between Christina S. And

1  Jessica G.'s statements.  (Pet. at 7).

2       At trial Christina S. testified that she told police at the time of the traffic stop that

3  Petitioner had put the narcotics in her pocket.  However, she testified that she only said this

4  because she was afraid of getting into trouble.  She explained that she had brought the jacket

5  from home, not knowing the drugs were in the pocket.  When the police stopped the vehicle, she

6  put her hands in her pocket and discovered the drugs.  On cross-examination, Petitioner's trial

7  counsel confirmed Christina S.'s trial testimony that Petitioner did not give her the drugs.  (RT

8  56-57).  Trial counsel asked her about her initial story to police that Petitioner had given her the

9  drugs, and she explained that she had made those statements because she was nervous.  (RT 61).

10      In contrast, Jessica G. Testified that when the police pulled the car over Petitioner threw

11  the drugs to Jessica G. And she threw them back at Petitioner.  (RT 68).  She then heard

12  Petitioner say "Here, Christina," to Christina S., sitting next to Petitioner in the rear of the

13  vehicle.  (RT 70).  Trial counsel elicited admissions that she had not seen Petitioner throw the

14  substance, possess the substance or pass anything to Christina S.  (RT 75-76).

15      The record demonstrates that Petitioner's trial counsel thoroughly examined both

16  witnesses, and did so in a manner calculated to extract testimony bolstering Petitioner's defense

17  that he did not give any drugs to Christina S.  Petitioner's claim of ineffective assistance of

18  counsel on this point is without merit.

19      Finally, Petitioner contends trial counsel was ineffective in failing to question Officer

20  Lewis as to why his conversations with Christina S. And Jessica G. were not tape recorded.

21  However, the record demonstrates that trial counsel *did* in fact question Officer Lewis on this

22  point, and that during closing arguments he highlighted the officer's failure to do so to the jury.

23  (RT 122, 286-287).  Thus, Petitioner's claim is without merit and should be denied.

24              **4.    Subclaim Eight**

25      In the eight part of his claim, Petitioner contends trial counsel was ineffective in

26  permitting Officer Lewis to testify at trial that Christina S. told him on the night of the incident

27  that Petitioner passed the narcotics off to Jessica G. First, and that she passed them back.  (Pet. at

28  7-8).  Petitioner claims Christina S. Never said that Petitioner handed narcotics to Jessica G.,

1    because the statement was not included in the police report.  (Pet. at 8).

2                    a.      Analysis of Petitioner's Claim

3           Petitioner's claim is without merit.  As noted above, to prevail on his ineffective

4    assistance of counsel claim, Petitioner must both demonstrate that his trial counsel's performance

5    was deficient and that the deficiency prejudiced his defense.  Strickland 466 U.S. 668 (1984).

6    The mere fact that the statement attributed to Christina S. was not included in the police report

7    did not provide any grounds for Petitioner's trial counsel to object to Officer Lewis' testimony.

8    Trial counsel questioned Officer Lewis as to the absence in the police report of statements

9    attributed to Christina S.  Officer Lewis indicated that he only included some of the verbatim

10   statements of Christina S. And Jessica G. In the report. (RT 122).  In his closing argument, trial

11   counsel highlighted the fact that the police had not recorded the conversation on the night of the

12   incident and stressed the importance of so doing. (RT 286).  Petitioner fails to indicate on what

13   basis trial counsel could have objected to the inclusion of this evidence at trial.  As previously

14   noted, trial counsel tried unsuccessfully to object to these statements as hearsay. (RT 86).

15   Petitioner fails to demonstrate that trial counsel's failure to object to the testimony of Officer

16   Lewis due to it not being recorded in the police report constituted ineffective assistance of

17   counsel.  Accordingly, his claim should be denied.

18           **5.      Subclaim Nine**

19           Petitioner claims trial counsel failed to pursue the lack of fingerprint evidence on the bags

20   of narcotics.  (Pet. at 8).  He claims that had trial counsel pursued this lack of evidence, it would

21   have demonstrated that he never touched, passed, possessed or handled the narcotics.  (Pet. at 8).

22                    a.      Analysis of Petitioner's Claim

23           Petitioner's claim is without merit.  Contrary to Petitioner's assertion, the record reflects

24   that trial counsel *did* address the lack of fingerprint evidence.  During his cross-examination of

25   Officer Lewis, trial counsel elicited from the witness the fact that no fingerprint evidence was

26   found on the bags of drugs. (RT 119).  During closing arguments, trial counsel reminded the jury

27   that no fingerprint evidence linked Petitioner to the bags of drugs found on Christina S.'s person.

28   (RT 288-289).  The record does not support Petitioner's claim of ineffective assistance in

ed                                    19

1  pursuing the lack of fingerprint evidence.  Accordingly, Petitioner's claim should be denied.

2          **6.      Subclaim Ten**

3          Petitioner claims trial counsel was ineffective for advising Petitioner not to testify at trial

4  due to his prior criminal history.  (Pet. at 8).  He alleges trial counsel did not advise him his prior

5  criminal history would be discussed during trial regardless for purposes of proving street gang

6  affiliation.  (Id.).

7                  a.      Factual Background

8          During post-trial in camera proceedings, the trial court addressed Petitioner's ineffective

9  assistance claim based on trial counsel's advice that he should not testify.  (Sealed Oct. 12, 2001

10 RT 26).  Trial counsel indicated that he advised Petitioner in the same manner that he advised all

11 of his clients:  namely, that Petitioner had an absolute right to testify and that nobody could stop

12 him from testifying, but that if he took the stand he could be impeached on cross-examination by

13 the prosecutor with prior convictions.  (Id. at 27).  Trial counsel indicated to the court that he

14 advised Petitioner not to testify because Petitioner had admitted gang affiliation when booked at

15 the jail, and that information would have been elicited by the prosecution on cross-examination

16 for purpose of proving the gang enhancements.

17         Further, trial counsel noted that during its examination of the gang expert, the prosecution

18 had not elicited testimony that Petitioner's prior record involved convictions, and that the

19 prosecutor had instructed the jury that the information was only to show Petitioner's gang

20 affiliation.  Trial counsel advised Petitioner not to testify because doing so would have permitted

21 the prosecution to bring in evidence of his prior conviction which was otherwise not on the

22 record.  (Id, 28-31).

23         The trial court held that Petitioner had not received ineffective assistance of counsel.

24 (Sealed Oct. 12, 2001 RT 34).  With respect to trial counsel's advice not to testify, the court

25 stated:

26         I specifically find that the defendant was given the opportunity to testify, if
   he chose to do so against his attorney's advice, but that counsel was making a
27 tactical decision to advise the defendant not to testify.  The defendant chose to
   follow his attorney's advice.  He many now have second thoughts about his
28 decision.  But, nonetheless, it's not grounds for granting a *Marsden* motion and
   substituting in new counsel.

1  (Sealed Oct. 12, 2001 RT 34).

2  <center>b.      State Court Review</center>

3      Following his conviction, Petitioner raised this claim before the Kern County Superior

4  Court.  The Superior Court denied the claim.  It found that Petitioner had not provided any fact or

5  documentary evidence that counsel's advice was erroneous or that he suffered any prejudice as a

6  result of his failure to take the stand.

7  <center>c.      Analysis of Petitioner's Claim</center>

8      The findings of the state court are not an unreasonable application of clearly settled

9  Supreme Court precedent.  As noted by the California Superior Court, Petitioner fails to

10  demonstrate that his counsel's advice was erroneous.  Instead, as the record of the post trial

11  hearing demonstrates, Petitioner's trial counsel made the tactical decision to advise Petitioner not

12  to take the stand because of his concern that doing so would open Petitioner up to cross

13  examination as to his prior conviction for robbery and his admissions that he was affiliated with a

14  criminal street gang.  Moreover, Petitioner fails to demonstrate a reasonable possibility that, but

15  for his attorney's advice not to take the stand, the outcome of the trial would have been different.

16  Accordingly, Petitioner's claim should be denied.

17  <center>**7.      Subclaim Eleven: Failure of the Defense Investigator/Special Counsel**</center>

18      In his final subclaim, Petitioner asserts his ineffective assistance of trial counsel was

19  compounded by the failures of the investigator for the special counsel to investigate his

20  ineffective counsel claims when he presented them to the trial court in the post-trial hearing.

21  (Pet. at 9).  He claims the lack of proper investigation deprived him of a defense (Pet. at 9-10).

22  <center>a.      State Court Review</center>

23      Petitioner's claim was first presented to the California Superior Court in a petition for

24  writ of habeas corpus.  In denying the claim, the state court found:

25  Failure of Investigator/Special Counsel
        Petitioner failed to offer any facts and/or documentary evidence that had
26  the investigator and specially appointed attorney done the acts that Petitioner
   asserts they should have done, that it would have produced evidence admissible at
27  trial, that the prosecution would not have objected to that evidence, that the Court
   would have allowed that evidence, that the evidence/witnesses would not have
28  been impeached, that the jury would have viewed the evidence in Petitioner's
   favor and that Petitioner would have received a better result at trial.  Merely

stating that the investigator and specially appointed counsel should have done certain things is insufficient to show as a demonstrable reality that Petitioner would have received a better result at trial had he taken the stand. As Petitioner failed to establish that there was a *reasonable probability* that he would have received a better result had the investigator and specially appointed attorney done certain acts, he has failed to show prejudice as a demonstrable reality. Therefore, Petitioner's claim that the investigator and specially appointed attorney failure [sic] to act was ineffective assistance of counsel is an unsupported conclusory allegation that is insufficient to support the relief granted. [Citation].

(Superior Court Habeas Op. At 7).

Petitioner then brought this claim before the Fifth DCA. In denying Petitioner's claim, the Fifth DCA found the claim to be "conclusional and lacking supporting analysis and documentation," and that Petitioner also failed to show any prejudice due to the acts of the investigator and specially appointed counsel.

### b.    Analysis of Petitioner's Claim

The determination of the state courts is not an unreasonable application of clearly settled Supreme Court precedent. The state courts determined that Petitioner had not met his burden of demonstrating that the actions of the investigator and/or special counsel had resulted in any prejudice. As the special counsel noted in the post-trial hearing, any investigation of the witnesses Petitioner sought to have interviewed would not have changed the fact that their testimony was subject to impeachment at trial. (Sealed Oct. 12, 2001 RT 3-4). The decision of trial counsel not to call these witnesses was a tactical decision made in light of the limited probative value of their testimony and their high susceptibility to impeachment. Petitioner has not demonstrated a reasonable probability that the testimony of these potential witnesses would have led to a different result in trial. As such, his claim is without merit and should be denied.

### RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED and the Clerk of the Court be DIRECTED to enter judgment.

These Findings and Recommendations are submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

1    Within thirty (30) days after being served with a copy, any party may file written

2 objections with the court and serve a copy on all parties.  Such a document should be captioned

3 "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections

4 shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after

5 service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to

6 28 U.S.C. § 636 (b)(1)(c).  The parties are advised that failure to file objections within the

7 specified time may waive the right to appeal the District Court's order.  Martinez v. Y1st, 951

8 F.2d 1153 (9th Cir. 1991).

9 IT IS SO ORDERED.

10 **Dated:    April 8, 2008                                    /s/ John M. Dixon                  **
                                            UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ed